UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

IN RE:

MARIAGRAZIA BIZZOTTO                          CASE NO.:  14-28595-LMI

      Debtor(s)                                   CHAPTER 7

_____/

## CREDITOR'S MOTION FOR
## RELIEF FROM THE AUTOMATIC STAY
*Subject Property:  5970 INDIAN CREEK DRIVE, UNIT 401, MIAMI BEACH, FL 33140*

Creditor, BANK OF NEW YORK MELLON, F/K/A BANK OF NEW YORK, AS TRUSTEE, IN TRUST FOR THE REGISTERED HOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2007-19, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-19 ("Creditor"), by and through undersigned counsel and pursuant to 11 U.S.C. §362(d), Bankruptcy Rule of Civil Procedure 4001 and Local Rule 4001-1, moves this Court for relief from the automatic stay to proceed *in rem*, and states:

1.    **Summary of Motion**: Creditor seeks relief from the automatic stay as the Debtor(s), MARIAGRAZIA BIZZOTTO ("Debtor"), is in default under the Note and Mortgage and is not adequately protecting the Creditor.

2.    **Creditor's Interest**: The Debtor filed this voluntary Chapter 7 proceeding on August 19, 2014.  The Creditor is a secured creditor through the Note and Mortgage executed on April 25, 2007 in the amount of $500,000.00.  ***Exhibit "A."***  The principal balance due is $436,341.80. The Creditor holds a security interest in the subject property located at  5970 INDIAN CREEK DRIVE, UNIT 401, MIAMI BEACH, FL 33140 ("Property"), more fully described as:

> CONDOMINIUM PARCEL NO. 401 IN NAUTICA CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, AS RECORDED APRIL 29, 2004 UNDER CLERK'S FILE NO. 04R-0306527 IN OFFICIAL RECORDS BOOK 22254, PAGE 0371. OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA

AS AMENDED AND OR SUPPLEMENTED FROM TIME TO TIME, TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPURTENANT THERETO.

3.     **Debtor's Intention with Property:** Based on the Debtor's schedules, her intention's with the Property have not been listed, however the Debtor does not currently hold title to the property.

4.     **Standing**: Creditor possesses standing to bring this motion as the Note and Mortgage were subsequently assigned to it. *See Troupe v. Redner, 652 So2d 394 (Fla 2d DCA 1995)*, citing *Withers v. Sandlin, 36 Fla. 619, 18 So. 856 (1896); Laing v. Gainey Builders, Inc., 184 So. 2d 897 (Fla 1st DCA 1966).*

5.     **Property Valuation**: Pursuant to the County Property Appraiser's Office in which the Property lies situate, the property is valued at $284,730.00 *See Exhibit "B"*. Pursuant to *Rule 803(8) Federal Rules of Evidence*, the property appraiser valuation is permissible.

6.     **Lack of Equity Pursuant to 11 U.S.C. §362(d)(2)(A):** As the amount due to the Creditor exceeds the Property's value, there is no equity in the Property.

7.     **Creditor Awarded Final Judgment in Foreclosure Proceeding**: The Creditor was awarded Final Judgment for Mortgage Foreclosure against the Debtor on 08/20/2014, in the amount of $496,589.23. A copy of the Final Judgment is attached as *Exhibit "C."* The Debtor has failed to cure the default on the Note and Mortgage, nor has the Debtor satisfied the Judgment.

8.     **Grounds for Relief:** The Creditor maintains that cause exists pursuant to 11 U.S.A. §362(d)(1) for the automatic stay to be lifted. The Creditor's security interest in the subject property is being significantly jeopardized by the Debtors' failure to make regular payments under the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest.  The Debtor is indebted to the Creditor in the amount of $496,589.23.  *See Exhibit "C*"

9.     Furthermore, Debtor is not the current owner of property as it was transferred to NAUTICA CONDOMINIUM ASSOCIATION, INC C/O ASSOCIATION LAW GROUP, P.L. by Certificate of Title on or about July 3, 2014. *See Exhibit "D"*

10.     Additionally, the Foreclosure Sale has been set one time in the underlying Foreclosure

Proceeding from February 14, 2012 to August 26, 2014.  *See* **Exhibit "E"** County Docket.

11.     Creditor further seeks relief in order to, as its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agree or other loan workout/loss mitigation agreement.  Creditor requests that it may contact the Debtor via telephone or written correspondence to offer such an agreement.  Any agreement shall be non-recourse unless included in a reaffirmation agreement.

12.     **Fees Incurred:** Creditor incurred necessary fees to prosecute this motion. Creditor requests bankruptcy fees of $750.00 and costs of $176.00 awarded for the Motion.

13.     **Waiver of Rule 4001(a)(3):** Creditor, respectfully, requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001 (a)(3), so that CREDITOR can pursue its in rem remedies without further delay.

**WHEREFORE,** Creditor, BANK OF NEW YORK MELLON, F/K/A BANK OF NEW YORK, AS TRUSTEE, IN TRUST FOR THE REGISTERED HOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2007-19, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-19, prays that this Court issue an Order terminating or modifying the stay, award it fees and costs in the amount of $926.00, and for any such further relief this Court deems proper and just.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth Local Rule 2090-1(A).

<div style="margin-left:40%">

SHD Legal Group P.A.
**Attorney for Creditor**
PO BOX 11438
Fort Lauderdale, FL  33339-1438
Phone: (954) 564-0071
Fax:  (954) 564-9252
Email: ADiaz@shdlegalgroup.com

By: /s/ Adam A Diaz
Adam A. Diaz
Florida Bar No.98379

</div>

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on September 2, 2014, I served a copy of the foregoing either electronically and/or via first class U.S. mail upon:

MARIAGRAZIA BIZZOTTO
5970 INDIAN CREEK DR #401
MIAMI BEACH, FL 33140
*Debtor(s)*

PRO SE
*Attorney for Debtor(s)*

MARCIA T. DUNN
555 NE 15 ST #7712
MIAMI, FL 33132
*Trustee*

By: <u>/s/ Adam A. Diaz</u>
Adam A. Diaz

Florida Bar No.98379

1456-148197
ADR

# MOTION FOR RELIEF EXHIBIT "A"

CFN: 20110585740 BOOK 27811 PAGE 416
DATE:08/31/2011  04.14 24:PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

Recording Requested By:
**Bank of America**
Prepared By: Cecilia Rodriguez
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Property Address:
5970 Indian Creek Dr UNIT 401
Miami Beach, FL 33140-2288
FL0-AM 14995152    8/25/2011

MIN #: [redacted]                  This space for Recorder's use
                                   MERS Phone #: [redacted]

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST  2007-19, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-19 whose address is 101 BARCLAY ST – 4W, NEW YORK ,NY 10286 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:        **FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION**
Original Borrower(s)    **GRAZIA BIZZOTTO, AND SPOUSE FIDENZIO BIZZOTTO**
Date of Mortgage:       4/25/2007
Original Loan Amount:   $500,000.00
Recorded in **Miami-Dade County,F L** on **5/8/2007**, book OR 25601, page 0766 and instrument number 2007R0465590

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
8-29-11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By:                                    By:
Luis Roldan                            Christopher Herrera
Assistant Secretary                    Assistant Secretary

Witness: Miguel Romero                 Witness: Swarupa Slee

State of California
County of Ventura

On 08-29-2011 before me, _____ **NAVID PAKTAN** _____, Notary Public, personally appeared Luis Roldan and Christopher Herrera, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____    (Seal)
My Commission Expires: _____

NAVID PAKTAN
Commission # 1837714
Notary Public - California
Santa Clara County
My Comm. Expires Mar 11, 2013

# NOTE

LOAN NO.:

APRIL 25, 2007
[Date]

PLANTATION
[City]

FLORIDA
[State]

5970 INDIAN CREEK DRIVE UNIT 401, MIAMI BEACH, FL  33140
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    500,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.875     %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the    1st    day of each month beginning on     JUNE, 2007    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     MAY 01, 2037    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
603 NORTH WILMOT ROAD, TUCSON, AZ  85711                     or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $     3,284.64     .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Initials:

FLORIDA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP-5N(FL) (0005)                                Page 1 of 3

Form 3210 1/01
LENDER SUPPORT SYSTEMS, INC. 5NFL.NEW (02/03)



**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of          15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be         5.000       % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Initials: _____

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)            _____ (Seal)
GRAZIA BIZZOTTO                   -Borrower                                            -Borrower

_____ (Seal)            _____ (Seal)
                                  -Borrower                                            -Borrower

_____ (Seal)            _____ (Seal)
                                  -Borrower                                            -Borrower

_____ (Seal)            _____ (Seal)
                                  -Borrower                                            -Borrower

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

BY _Michele Sjolander_
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC
COUNTRYWIDE BANK, FSB

BY _Laurie Meder_
LAURIE MEDER
SENIOR VICE PRESIDENT

WITHOUT RECOURSE,
PAY TO THE ORDER OF
COUNTRYWIDE BANK, FSB
FIRST MAGNUS FINANCIAL CORPORATION
An Arizona Corporation
BY: _A. Alvarez_
Amanda Alvarez/Closing Manager

Return To: Amanda Alvarez
FIRST MAGNUS FINANCIAL CORPORATION

603 N. WILMOT **RECEIVED**
TUCSON, AZ 85711

JUN 0 4 2007

**DISTINGUISHED TITLE & ABSTRACT, CORP.**
100 S. Pine Island Rd., Suite 114
Plantation, FL 33324

EM
LT  CW-P
rez

CFN 2007R0465590
OR Bk 25601 Pgs 0766 - 784; (19pgs)
RECORDED 05/08/2007 14:06:28
MTG DOC TAX 1,750.00
INTANG TAX 1,000.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA



————————[Space Above This Line For Recording Data]————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    APRIL 25, 2007
together with all Riders to this document.
(B) "Borrower" is
GRAZIA BIZZOTTO, AND SPOUSE FIDENZIO BIZZOTTO

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

Initials:

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3010 1/01
VMP-6A(FL) (0005)    Page 1 of 16    LENDER SUPPORT SYSTEMS, INC. MERS6AFL.NEW (05/04)

Lender is a CORPORATION
organized and existing under the laws of ARIZONA
Lender's address is
603 NORTH WILMOT ROAD, TUCSON, AZ 85711

(E) "Note" means the promissory note signed by Borrower and dated          APRIL 25, 2007
The Note states that Borrower owes Lender
FIVE HUNDRED THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X X X X X X X

                                                                Dollars
(U.S. $ 500,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   MAY 01, 2037

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:

VMP-6A(FL) (0005)                          Page 2 of 16                          Form 3010  1/01

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the                      COUNTY
[Type of Recording Jurisdiction]  of                    MIAMI-DADE                [Name of Recording Jurisdiction]:

CONDOMINIUM PARCEL NO. 401 IN NAUTICA CONDOMINIUM, ACCORDING TO THE DECLARATION OF
CONDOMINIUM THEREOF, AS RECORDED APRIL 29, 2004 UNDER CLERK'S FILE NO. 04R-0306527 IN
OFFICIAL RECORDS BOOK 22254, PAGE 0371, OF THE PUBLIC RECORDS OF MIAMI-DADE
COUNTY,LORIDA, AS AMENDED ANDOR SUPPLEMENTED FROM TIME TO TIME, TOGETHER WITH AN
UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPURTENANT THERETO.

Parcel ID Number:                                          which currently has the address of
                            5970 INDIAN CREEK DRIVE UNIT 401                              [Street]
            MIAMI BEACH                    [City] , Florida        33140        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials:

VMP-6A(FL) (0005)                        Page 3 of 16                        Form 3010  1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

VMP-6A(FL) (0005)                    Page 4 of 16                    Form 3010  1/01

Initials:

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

VMP-6A(FL) (0005)          Page 6 of 16          Form 3010 1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Initials:

VMP-6A(FL) (0005)                      Page 7 of 16                      Form 3010 1/01

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: _____

VMP-6A(FL) (0005)                          Page 8 of 16                          Form 3010  1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials:

VMP-6A(FL) (0005)                           Page 9 of 16                           Form 3010  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

Initials:

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. **Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

VMP-6A(FL) (0005)                          Page 14 of 16                          Initials: ___    Form 3010  1/01

Case 14-28595-LMI    Doc 10    Filed 09/02/14    Page 25 of 47

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____    -Witness
SCOTT SOMERS

_____    -Witness
Natalie Aene

_____(Seal)    _____(Seal)
GRAZIA BIZZOTTO              -Borrower    FIDENZIO  BIZZOTTO              -Borrower

_____(Seal)    _____(Seal)
                            -Borrower                                -Borrower

_____(Seal)    _____(Seal)
                            -Borrower                                -Borrower

_____(Seal)    _____(Seal)
                            -Borrower                                -Borrower

(Property Address)                          (Mailing Address)
5970 INDIAN CREEK DRIVE UNIT 401            5970 INDIAN CREEK DRIVE UNIT 401
MIAMI BEACH, FL  33140                      MIAMI BEACH, FL  33140

VMP-6A(FL) (0005)                Page 15 of 16                Form 3010   1/01

STATE OF   FLORIDA                                    ,        Brovard           County ss:
    The foregoing instrument was acknowledged before me this   4/25/07                    by
GRAZIA BIZZOTTO ~ Fidenzio Bizzotto

who is personally known to me or who has produced  US Visa + FDL                    as identification.

_____
Notary Public

```
*************************************
       SCOTT SOMERS
       Comm# DD0351047
       Expires 8/30/2008
     Bonded thru (800)432-4254
      Florida Notary Assn., Inc.
*************************************
```

VMP-6A(FL) (0005)                    Page 16 of 16                    Initials_____
                                                              Form 3010  4/01

# CONDOMINIUM RIDER

THIS  CONDOMINIUM RIDER is made this      25th      day of          APRIL, 2007        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:
                    5970 INDIAN CREEK DRIVE UNIT 401, MIAMI BEACH, FL  33140
                                [Property Address]
The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:
                            NAUTICA CONDOMINIUM
                        [Name of Condominium Project]
(the "Condominium Project").  If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
    A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.
    B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family -
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3140 1/01
V-8R (0411).01                        Page 1 of 3          LENDER SUPPORT SYSTEMS INC. 8R.NEW (09/06)

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials:

V-8R (0411).01                    Page 2 of 3                    Form 3140 1/01

OR BK 25601 PG 0784
LAST PAGE

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____(Seal)
GRAZIA BIZZOTTO                    -Borrower

_____(Seal)
FIOENZIO BIZZOTTO                  -Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

V-8R (0411).01                Page 3 of 3                Form 3140 1/01

# MOTION FOR RELIEF EXHIBIT "B"



# OFFICE OF THE PROPERTY APPRAISER

## Detailed Report

Generated On : 8/28/2014

| Property Information | |
|---|---|
| Folio: | 02-3214-029-0070 |
| Property Address: | 5970 INDIAN CREEK DR < 401 |
| Owner | NAUTICA CONDO ASSN INC C/O ASSOCIATION LAW GROUP PL |
| Mailing Address | PO BOX 311059 MIAMI , FL 33231 |
| Primary Zone | 4000 MULTI-FAMILY - 63-100 U/A |
| Primary Land Use | 0407 RESIDENTIAL - TOTAL VALUE : CONDOMINIUM - RESIDENTIAL |
| Beds / Baths / Half | 2 / 3 / 0 |
| Floors | 0 |
| Living Units | 1 |
| Actual Area | Sq.Ft |
| Living Area | 1,440 Sq.Ft |
| Adjusted Area | 1,440 Sq.Ft |
| Lot Size | 0 Sq.Ft |
| Year Built | 2004 |

| Assessment Information | | | |
|---|---|---|---|
| Year | 2014 | 2013 | 2012 |
| Land Value | $0 | $0 | $0 |
| Building Value | $0 | $0 | $0 |
| XF Value | $0 | $0 | $0 |
| Market Value | $284,730 | $284,730 | $299,720 |
| Assessed Value | $284,730 | $284,730 | $299,720 |

| Benefits Information | | | | |
|---|---|---|---|---|
| Benefit | Type | 2014 | 2013 | 2012 |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

| Taxable Value Information | | | |
|---|---|---|---|
| | 2014 | 2013 | 2012 |
| **County** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $284,730 | $284,730 | $299,720 |
| **School Board** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $284,730 | $284,730 | $299,720 |
| **City** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $284,730 | $284,730 | $299,720 |
| **Regional** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $284,730 | $284,730 | $299,720 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp (http://www.miamidade.gov/info/disclaimer.asp)

Version:

# OFFICE OF THE PROPERTY APPRAISER

Generated On : 8/28/2014

**Property Information**

**Folio:** 02-3214-029-0070

**Property Address:**  5970 INDIAN CREEK DR 401

# Roll Year **2014** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |

| Building Information | | | | | | |
|---|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp (http://www.miamidade.gov/info/disclaimer.asp)

Version:



**OFFICE OF THE PROPERTY APPRAISER**

Generated On : 8/28/2014

**Property Information**

**Folio:** 02-3214-029-0070

**Property Address:**   5970 INDIAN CREEK DR 401

# Roll Year **2013** Land, Building and Extra-Feature Details

| Land Information | | | | | |
| --- | --- | --- | --- | --- | --- |
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |

| Building Information | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |

| Extra Features | | | |
| --- | --- | --- | --- |
| Description | Year Built | Units | Calc Value |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp (http://www.miamidade.gov/info/disclaimer.asp)

Version:

# OFFICE OF THE PROPERTY APPRAISER

Generated On : 8/28/2014

**Property Information**

**Folio:** 02-3214-029-0070

**Property Address:**   5970 INDIAN CREEK DR 401

# Roll Year **2012** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |

| Building Information | | | | | | |
|---|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp (http://www.miamidade.gov/info/disclaimer.asp)

Version:



**OFFICE OF THE PROPERTY APPRAISER**

Generated On : 8/28/2014

**Property Information**

**Folio:** 02-3214-029-0070

**Property Address:**   5970 INDIAN CREEK DR 401

| Full Legal Description |
| --- |
| NAUTICA CONDO |
| UNIT 401 |
| UNDIV 3.1489% |
| INT IN COMMON ELEMENTS |
| OFF REC 22254-0371 |
| COC 23285-2540 03 2005 1 |

| Sales Information | | | |
| --- | --- | --- | --- |
| Previous Sale | Price | OR Book-Page | Qualification Description |
| 03/07/2014 | $100 | 29224-3547 | Financial inst or "In Lieu of Forclosure" stated |
| 03/01/2005 | $460,000 | 23285-2540 | 2008 and prior year sales; Qual by exam of deed |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp (http://www.miamidade.gov/info/disclaimer.asp)

Version:

# MOTION FOR RELIEF EXHIBIT "C"

FJVD 5
1-3

$496,589.23

BANK OF NEW YORK MELLON, F/K/A BANK OF
NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC.,
ALTERNATIVE LOAN TRUST 2007-19, MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2007-19,

      Plaintiff,

vs.

GRAZIA BIZZOTTO; FIDENZIO BOZZOTTO;
NAUTICA CONDOMINIUM ASSOCIATION, INC.;
UNKNOWN TENANT NO. 1; UNKNOWN TENANT
NO. 2; and ALL UNKNOWN PARTIES CLAIMING
INTERESTS BY, THROUGH, UNDER OR AGAINST A
NAMED DEFENDANT TO THIS ACTION, OR
HAVING OR CLAIMING TO HAVE ANY RIGHT,
TITLE OR INTEREST IN THE PROPERTY HEREIN
DESCRIBED,

      Defendants.

_____/

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 12-05738-CA-01
132012CA05738XXXXXX

FILED FOR RECORD

FINAL ORDERS AS TO ALL PARTIES
SRS DISPOSITION
NUMBER _____
THE COURT DISMISSES THIS CASE AGAINST
ANY PARTY NOT LISTED IN THIS FINAL ORDER
OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
AS TO ALL PARTIES.
        Judge's Initials

## FINAL JUDGMENT OF FORECLOSURE

    **THIS ACTION** was heard before the Court for a non jury trial on August 20, 2014. On
the evidence presented, **IT IS ORDERED AND ADJUDGED** that Final Judgment is hereby
ENTERED in favor of the Plaintiff against all Defendants listed by name: GRAZIA BIZZOTTO;
FIDENZIO BOZZOTTO; NAUTICA CONDOMINIUM ASSOCIATION, INC.;

1.    **Amounts Due and Owing.** Plaintiff is due:

| | | |
|---|---|---|
| Principal due on the note secured by the mortgage foreclosed: | $ | 436,341.80 |
| Interest on the note and mortgage from JULY 1, 2010 to AUGUST 20, 2014 | $ | 34,844.24 |
| Taxes for the year(s) of | | |
| | $ | 0.00 |
| Insurance premiums for the year(s) of | | |
| | $ | 0.00 |
| Attorneys' Fees: | | |

| | | |
|---|---|---|
| Finding as to reasonable number of hours | | 28.9 |
| Finding as to reasonable hourly rate | $ | 175.00 |
| Attorneys' Fees Total | $ | 5,050.00 |

(* The requested attorney's fee is a flat rate fee that the firm's client has agreed to pay in this matter. Given the amount of the fee requested and the labor expended, the Court finds that a lodestar analysis is not necessary and that the flat fee is reasonable.)

Court Costs, Now Taxed:

| | | |
|---|---|---|
| Filing fee | $ | 1,906.00 |
| Service of Process at  per defendant(s) | $ | |
| SUBTOTAL | $ | 478,142.04 |

Additional Costs:

| | | |
|---|---|---|
| Net Escrow Advances | $ | 22,014.69 |
| Property Inspection | $ | 549.00 |
| Broker's Price Opinion | $ | 531.00 |
| Non Resident Cost Bond | $ | 100.00 |
| Foreclosure Sale Fee | $ | 70.00 |
| Court Reporter | $ | 232.50 |
| SUBTOTAL | $ | ~~501,639.23~~ 496,589.23 |
| Less: Escrow Balance | $ | 0.00 |
| Less: Other | $ | 0.00 |
| GRAND TOTAL | $ | ~~501,639.23~~ 496,589.23 |

2.    **Interest.** The grand total amount referenced in Paragraph 1 shall bear interest from this date

forward at the prevailing legal rate of interest.

3.  **Lien on Property.** Plaintiff, whose address is c/o SHD Legal Group P.A., PO BOX 11438, Fort Lauderdale, FL 33339-1438, holds a lien for the grand total sum superior to all claims or estates of the defendant(s), on the following described property in Miami Dade County, Florida:

CONDOMINIUM PARCEL NO. 401 IN NAUTICA CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, AS RECORDED APRIL 29, 2004 UNDER CLERK'S FILE NO. 04R-0306527 IN OFFICIAL RECORDS BOOK 22254, PAGE 0371, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA, AS AMENDED AND OR SUPPLEMENTED FROM TIME TO TIME, TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPURTENANT THERETO.

Property Address: 5970 INDIAN CREEK DRIVE, UNIT 401, MIAMI BEACH, FL 33140

4.  **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 2 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on ___2/17/15___, 2014, at 9:00 A.M. to the highest bidder for cash after having first given notice as required by Section 45.031, Florida Statutes. The subject property shall be sold by electronic sale at: www.miamidade.realforeclose.com.

5.  **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for documentary stamps affixed to the certificate of title. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

6.  **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale; and by retaining any remaining amount pending further order of this Court.

7.  **Right of Possession.** Upon filing the Certificate of Sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under Chapter 718 or Chapter 720, Fla. Stat, if any. Upon filing the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the property, subject to the provisions of the Protecting Tenants at Foreclosure Act of 2009, which was extended until 12/13/14 by the Dodd-Frank Wall Street Reform and Consumer Protection Act.

8.  **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper including, without limitation, ~~deficiency judgments and~~ supplemental actions to foreclose any interests omitted from this suit or as necessary for Plaintiff or its assigns to cure title defects.

9. Plaintiff waives its right to seek a deficiency judgment unless the acquirer of the

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL**
**MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE** signature
**PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.** to the note that is the basis of this action.

IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS
REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO
LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL
NOT BE ENTITLED TO ANY REMAINING FUNDS.

**DONE AND ORDERED** in Chambers in Miami Dade County, Florida, this _____ day of
_____, 2014.

GERALD D. HUBBART
SENIOR JUDGE

Circuit Judge

Kathleen E. Angione, Esquire
SHD Legal Group P.A.
Attorneys for Plaintiff
PO BOX 11438
Fort Lauderdale, FL  33339-1438
Telephone: (954) 564-0071
Service E-mail: answers@shdlegalgroup.com

Copies furnished to all parties on the attached service list

1162-143921
MB.

**SERVICE LIST**
Case No. 12-05738-CA-01
132012CA05738XXXXXX

MARK L. POMERANZ, ESQ.,
Attorney For GRAZIA BIZZOTTO
1920 E. HALLANDALE BEACH BLVD., STE 802
HALLANDALE BEACH, FL 33009
Email Address: Pomeranzlawfirm@gmail.com

MARK L. POMERANZ, ESQ.,
Attorney For FIDENZIO BIZZOTTO
1920 E. HALLANDALE BEACH BLVD., STE 802
HALLANDALE BEACH, FL 33009
Email Address: Pomeranzlawfirm@gmail.com

ANDREW JOHN BERNHARD, ESQ.,
Attorney For  NAUTICA CONDOMINIUM ASSOCIATION, INC.
333 SE 2nd Avenue
Suite 2000
MIAMI, FL 33131
Email Address: abernhard@bernhardlawfirm.com

# MOTION FOR RELIEF EXHIBIT "D"



CFN 2014R0486515
OR Bk 29224 Pg 3547 (1pg)
RECORDED 07/10/2014 15:09:26
DEED DOC TAX 0.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

NAUTICA CONDO ASSN INC
Plaintiff(s) / Petitioner(s)

VS.

BIZZOTTA, FIDENZIO , et al.
Defendant(s) / Respondents(s)

GENERAL JURISDICTION DIVISION

| | |
|---|---|
| Case No: | 08032695CA01 |
| Section: | 30 |
| Doc Stamps: | $0.60 |
| Surtax: | $0.00 |
| Consideration: | $100.00 |

## CERTIFICATE OF TITLE

**The undersigned clerk** of the court certifies that a Certificate of Sale was executed and filed in this action on March 07, 2014, for the property described herein and that no objections to the sale have been filed within the time allowed for filing objections.

The following property in Miami-Dade County, Florida:

CONDOMINIUM UNIT NO. 401, IN NAUTICA CONDOMINIUM, ACCORDING TO THE DECLARATION THEREOF, RECORDED APRIL 29, 2004, UNDER CLERK'S FILE NO. 04R-0306527, IN OFFICIAL RECORDS BOOK 22254, PAGE 0371, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Property Address: 5970 Indian Creek Drive, Unit 401, Miami Beach, FL 33140.

was sold to:

NAUTICA CONDOMINIUM ASSOCIATION, INC., A FLORIDA NON PROFIT CORPORATION
C/O ASSOCIATION LAW GROUP, P.L.
PO BOX 311059
Miami, FL, 33231

WITNESS my hand and the seal of this court on  July 03, 2014 .

Harvey Ruvin, Clerk of Courts
Miami-Dade County, Florida

Rev. 10/5/2009

1

# MOTION FOR RELIEF EXHIBIT "E"

🛒 **0 Item(s) in Basket**　　　　　　　　　　**Home**　　**Online Services**　　**About us**　　**Contact us**

**HARVEY RUVIN**
**CLERK** *of the* **COURTS**
**MIAMI-DADE COUNTY, FLORIDA**

## Civil Court Online System - Docket Information

BACK TO SEARCH RESULTS　　　　　　　ALL PARTIES　　　　　　　　START A NEW SEARCH

**BANK OF NEW YORK MELLON (THE) vs BIZZOTTO, GRAZIA**
* Click on BOOK/PAGE of a particular docket to see the image if it is available *

**Case Number (LOCAL):** 2012-5738-CA-01　　　　**Dockets Retrieved:** 71　　　　**Filing Date:** 02/14/2012

**Case Number (STATE):** 13-2012-CA-005738-0000-01　　　　**Judicial Section:** 22

| Date | Book/Page | Docket Entry | Comments |
|------|-----------|--------------|----------|
| 08/26/2014 | | MOTION: | TO CANCEL SALE |
| 08/21/2014 | | MTG COLLECT FEE | 70.00 |
| 08/20/2014 | | MTGE FORECLOSURE SALE DATE | 02/17/2015 09:00 AM |
| 08/20/2014 | | CLOSING JUDGE NAME | HUBBART, GERALD D |
| 08/20/2014 | | NOTICE OF FILING: | ORIGINAL DOCUMENTS |
| 08/20/2014 | | FINAL DISPOSITION DOCUMENT | |
| 08/20/2014 | 29277 / 4653 Pages: 5 | FINAL JUDGMENT | N $ 496589.23 BK:29277 PG:4653 DN01 DN02 DN03 |
| 08/19/2014 | 29278 / 3170 Pages: 1 | RECORDED DOCUMENT | BK:29278 PG:3170 NOTICE OF BANKRUPTCY 14-28595-LMI |
| 08/09/2014 | | WITNESS LIST | PN01 |
| 08/08/2014 | | AFFIDAVIT OF: | AFFIDAVIT OF ATTORNEYS FEES AND COSTS |
| 08/08/2014 | | AFFIDAVIT AS TO ATTORNEY FEES | |
| 07/22/2014 | | CERTIFICATE OF MAILING | |
| 07/21/2014 | | WITNESS LIST | PN01 |
| 07/16/2014 | | ORDER FOR SUBSTITUTION OF COUNSEL | ATY:00767700 PN01 |
| 07/11/2014 | | WITNESS LIST | DN01 DN02 EXHIBIT LIST |
| 07/08/2014 | | ORD SETTING NJ TRIAL CRTRM 3-1 | 08/20/2014 09:00 AM |
| 06/11/2014 | | CERTIFICATE OF MAILING | |
| 06/09/2014 | | STIPULATION | FOR SUBSTITUTION OF COUNSEL |
| 02/03/2014 | | NOTICE OF APPEARANCE | ATTORNEY: 00061972 PN01 |
| 02/03/2014 | | NOTICE OF TRIAL (CASE AT ISSUE) | |
| 01/31/2014 | | REPLY TO AFFIRMATIVE DEFENSES | |
| 01/29/2014 | | NOTICE OF FILING AFFID OF REASONABLE ATTY FEES | |
| 01/28/2014 | | ORDER ON MOTION TO STRIKE | |
| 01/27/2014 | | WITNESS LIST | DN01 |
| 01/13/2014 | | WITNESS LIST | PN01 |

| | | | |
|---|---|---|---|
| 12/06/2013 | | WITNESS LIST | PN01 |
| 12/03/2013 | | ORD SETTING NJ TRIAL CRTRM 3-1 | 01/28/2014 09:00 AM |
| 11/19/2013 | | NOTICE OF FILING: | CURRENT SERVICE LIST |
| 11/08/2013 | | NOTICE: | READINESS FOR JURY TRIAL |
| 11/08/2013 | 28906 / 274 Pages: 2 | NOTICE OF DROPPING PARTY | BK:28906 PG:0274 |
| 07/15/2013 | | NOTICE OF ANSWER TO INTERROGATORIES | |
| 06/13/2013 | | RESPONSE: | EFILED |
| 06/05/2013 | | RESPONSE TO REQUEST FOR PRODUCTION | |
| 06/03/2013 | | ANSWER AND AFFIRMATIVE DEFENSE | ATTORNEY:00622508 DN01 DN02 |
| 05/31/2013 | | ANSWER AND AFFIRMATIVE DEFENSE | ATTORNEY:00622508 DN01 DN02 |
| 05/28/2013 | | RESPONSE TO REQUEST FOR ADMISSIONS | |
| 05/17/2013 | | MOTION FOR EXTENSION OF TIME | |
| 05/08/2013 | | REQUEST FOR ADMISSIONS | |
| 05/08/2013 | | NOTICE OF UNAVAILABILITY/ABSENCE | |
| 05/08/2013 | | NOTICE OF INTERROGATORY | |
| 05/08/2013 | | REQUEST FOR PRODUCTION | |
| 05/07/2013 | | REQUEST FOR ADMISSIONS | |
| 05/07/2013 | | REQUEST FOR PRODUCTION | |
| 05/07/2013 | | NOTICE OF INTERROGATORY | |
| 05/07/2013 | | NOTICE OF UNAVAILABILITY/ABSENCE | |
| 03/05/2013 | | ORDER DENYING MOTION TO DISMISS | |
| 01/16/2013 | | NOTICE HEARING- | MOTIONS 03/05/2013 09:30AM LS:01/22 |
| 08/16/2012 | | NOTICE OF HEARING- | MOTIONS 10/16/2012 09:30 AM |
| 05/31/2012 | | NOTICE OF HEARING- | MOTIONS 08/07/2012 09:30 AM |
| 05/24/2012 | | CANCELLATION NOTICE | 05/22/2012 09:30 AM |
| 05/23/2012 | | MOTION TO DISMISS | DEFS. GRAZIA BIZZOTTO AND FIDENZIO BIZZOTTO |
| 05/22/2012 | | ORDER: | GRANTING DEFT'S EXTENSION OF TIME TO RESPOND COMPLAINT |
| 04/24/2012 | | TEXT | NON-RESIDENT COST BOND |
| 04/24/2012 | 28088 / 1533 Pages: 2 | BOND | $ 100.00 BK:28088 PG:1533 PN01 NON RESIDENT COST BOND |
| 04/24/2012 | | COURT REGISTRY DEPOSIT | $ 100.00 MORRIS / HARDWICK / SCHNEIDER, LLC |
| 03/28/2012 | | ANSWER AND AFFIRMATIVE DEFENSE | ATTORNEY:00084031 DN03 |
| 03/19/2012 | | NOTICE OF HEARING- | MOTIONS 05/22/2012 09:30 AM |
| 03/06/2012 | | SERVICE RETURNED | BADGE # 1725 P 02/21/2012 DN03 |
| 03/06/2012 | | SERVICE RETURNED | BADGE # 1725 P 02/18/2012 DN02 |
| 03/06/2012 | | SERVICE RETURNED | BADGE # 1725 P 02/18/2012 DN01 |
| 03/06/2012 | | NOTICE OF APPEARANCE | ATTORNEY: 00622508 DN01 DN02 |
| 03/06/2012 | | | |

| | | SERVICE RETURN FOR UNKNOWN PARTY | |
|---|---|---|---|
| 03/06/2012 | | MOTION FOR EXTENSION OF TIME | |
| 03/06/2012 | | NOTICE OF UNAVAILABILITY/ABSENCE | |
| 03/02/2012 | 28017 / 4498 Pages: 2 | LIS PENDENS | BK:28017 PG:4498 |
| 02/14/2012 | | FILING FEE FOR MTGE FRCLS | $ 1906.00 |
| 02/14/2012 | | PN'S CERTIF OF SETTLEMENT AUTHORITY | |
| 02/14/2012 | | SUMMONS ISSUED | DN01 DN02 DN03 |
| 02/14/2012 | | COMPLAINT | |
| 02/14/2012 | | CERTIFICATE REGARDING ORIGINAL NOTE | |
| 02/14/2012 | | CIVIL COVER | |

BACK TO SEARCH RESULTS                    ALL PARTIES                    START A NEW SEARCH

Civil Search Home | Civil Court Information | Email | Login
Home | Privacy Statement | Disclaimer | Contact Us | About Us
2008 Clerk of the Court. All rights reserved.



S0142976